Gaston, in this case, suggested a diminution of the record because it did not show that an appeal was granted until after the adjournment of the court below, and moved for a certiorari.
The record stated that the issues in the cause were submitted to a jury, who found a verdict for the defendant; that a motion was made for a new trial; that the motion was overruled, and judgment rendered. These facts were officially certified by the clerk under seal, and then followed a statement by the clerk that an appeal was prayed and granted to this Court, and an appeal bond in the penalty of $1,000 was filed, but, owing to its escaping the recollection of the clerk, (401) no entry of the appeal was made on the record. The clerk also stated that the appeal bond was filled up with a penalty less by $500 than that which the judge had directed, which arose from the clerk's not having heard what amount the judge directed as the penalty of the bond, and this error was not discovered by the clerk until after the adjournment of the court.
A statement of the case made for this Court by the presiding judge below also accompanied the record and concluded with the remark that an appeal to this Court was prayed by the plaintiff.
Gaston then read the affidavit of the clerk below, containing the same facts set forth in his statement, and also the affidavit of the clerk of the county court of Martin, confirming that statement, and adding that the clerk was absent from the court room, preparing a bond when the judge directed the bond to be in the penalty of $1,500, instead of $1,000, the sum first agreed on. The affidavit of the defendant himself was then read, and from its contents it appeared that the defendant had signed the bond tendered him by the clerk, as had also his securities, presuming that all was properly done; that the defendant and his securities were willing to file a bond to any amount, and that $1,000 was far more than sufficient to satisfy all the costs of the suit; that as soon as he understood there was some difficulty as to the penalty of the bond he executed another for $1,500, with ample security, and now stood ready to give any further security this Court might require.
Hogg opposed the issuing of a certiorari and contended that the utmost that could be done under these circumstances was to grant arule; that as to the affidavits, that of Cherry, the defendant, did not show that any securities were ever tendered to the court, nor (402) did it explain the cause of the omission; it did not show that either Cherry or his counsel was mistaken as to the amount of the bond *Page 226 
directed by the judge, and the other affidavits merely showed that theclerk was mistaken.
But the Court directed a certiorari.
remarking that, to settle the point of practice, it might be well to observe that a certiorari is granted on facts uncontroverted, apparent on the record or papers before the Court, but a rule is proper where the application is made on facts not so apparent. But as in all cases we permit the facts to be controverted when the certiorari is returned, it is the same thing as granting a rule only.
On the return of the certiorari it appeared to be an action for slander, in charging the plaintiff with perjury, that had been tried before Badger,J., at MARTIN Spring Term, 1823.
The jury having been charged with the cause, the plaintiff produced a notice to the defendant, returned by the sheriff executed on 9 January, 1821, to take the depositions of William Wilson and others on 12 February, 1821, at the house of Daniel Cherry, in Wilson County, State of Tennessee, and offered to read the depositions taken accordingly. This suit had been removed originally from Martin to Edgecombe, and from Edgecombe back to Martin, and the depositions were taken under a commission issued by the clerk of Edgecombe court. They were not taken by consent of parties, and there was no special rule to take depositions in this cause which prescribed the time of notice, nor did it appear that there was any general rule of Edgecombe court under which the depositions were taken. The presiding judge offered to receive any evidence of the existence and (403) terms of such rule, and no such evidence being offered, he decided that the depositions were inadmissible. Upon the trial of the issues it was material for the defendant to show that a certain Daniel Cherry did not reside in the county of Martin on 6 April, 1809. Testimony was given of his having removed to Tennessee in 1802, and that he was in the habit, from that time up to 1810, of frequently passing and repassing between Martin County and Tennessee. The defendant then offered to prove declarations of Daniel Cherry, made in Tennessee and Martin County, between 1802 and 1809, before any controversy arose as to his place of abode, explanatory of his presence in the one place or the other. This testimony was objected to by plaintiff, but received by the court, and the jury was instructed that these declarations were not evidence of themselves against the plaintiff, but that, taken in connection with his coming and presence and business in Martin or Tennessee, and as explanatory thereof, they were proper to go to the jury, and from them they were at liberty to infer residence *Page 227 
from the facts and declarations taken together, if satisfactory to them. A verdict was returned for the defendant, and a new trial was moved
for, because the depositions were rejected and the declarations of Daniel Cherry received. A new trial was refused; judgment and appeal.